**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Garron Gonzalez, | ) | |
| | ) | |
| Petitioner, | ) | **ORDER DENYING HABEAS RELIEF** |
| | ) | |
| vs. | ) | Case No. 1:23-cv-104 |
| | ) | |
| J. L. Jamison, Warden of FCI | ) | |
| Otisville, and Drew Wrigley, Attorney | ) | |
| General, State of North Dakota, | ) | |
| | ) | |
| Respondents. | ) | |

Before the Court is the Petition and Amended Petition ("Petition") under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody filed by Petitioner, Garron Gonzalez.[1] (Doc. Nos. 1, 7). Respondents, J. L. Jamison, Warden, and Drew Wrigley, Attorney General ("State"), filed an answer seeking dismissal of the Petition. (Doc. No. 9). The parties have consented to the exercise of jurisdiction by the magistrate judge. (Doc. Nos. 4, 13). The Court requested Gonzalez to submit a response to the State's arguments for dismissal, which he did on April 1, 2024. (Doc. No. 15). The matter is now ripe for review.

I.   **BACKGROUND**

A.   **Criminal Proceedings**

Gonzalez pleaded guilty in state court to two counts of gross sexual imposition of a juvenile female, under the age of 15, on January 13, 2004. (Doc. No. 9-6 at 3-4).

---

[1] Because the Amended Petition contains additional information sought by the Court but does not raise any new or additional substantive issues, the Court's review is directed to the Amended Petition. (Doc. No. 7).

On August 22, 2003, at 10:30 p.m., Gonzalez saw the victim, L.G., at Wal-Mart, where he worked.[2] Id. at 5. Gonzalez knew L.G. through mutual friends. Gonzalez asked if he could come to her house on his break, which he thought would be around midnight on August 23. Id. Gonzalez arrived at L.G.'s home at about 12:10 a.m. on August 23, 2003, and while he was there L.G. performed oral sex on him. Id. Before returning to work, Gonzalez said he wanted to come back after his shift. Gonzalez did so, arriving between 6:45 and 7:00 a.m. on August 23, and again L.G. performed oral sex on him. Id. L.G. was 14 years old at the time. At the plea hearing, Gonzalez and his defense counsel agreed to these facts with a caveat. Id. Counsel explained to the court that a private investigator interviewed L.G., and "[s]he basically indicated she was angry at [Gonzalez] because he had slighted a friend of hers, and she was going to set him up, that this was her doing." Id. at 6. When the court began to question counsel about the alleged "set up," Gonzalez's attorney responded, "he's a big boy and he should have known better." Id.

Gonzalez's guilty plea was accepted by the court as freely and voluntarily given and supported by a factual basis. Id. The maximum punishment on each count was 20 years in prison. Pursuant to a favorable plea recommendation by the State, Gonzalez was sentenced to five years on each count to be served concurrently with all but 130 days suspended, credit for time served of 130 days, and five years of supervised probation. (Doc. No. 9-7 at 2, 6; Doc. No. 9-8). No appeal was taken.

Gonzalez had trouble abiding the terms of his supervised probation and his probation was revoked on several occasions.[3] He was resentenced more harshly on each revocation. (Doc. Nos.

---

[2] The facts are taken from the transcript of the change of plea hearing. (Doc. No. 9-6).

[3] The Court notes that a primary basis for the petitions for revocation was Gonzalez's continued contact of a sexual nature with minor females. (See Doc. No. 9-12 at 5-7, 11-13; Doc. No. 9-17 at 5-8; Doc. No. 9-24 at 8-10, 13, 15, 19-22, 24-30). Gonzalez was federally indicted

9-9, 9-11, 9-13, 9-14, 9-16, 9-18; see also Doc. No. 9 at 2-10 (explaining the procedural history)). On February 9, 2011, he was resentenced to 20 years on each count to be served consecutively. (Doc. No. 9-18). The North Dakota Supreme Court affirmed the amended sentence on appeal. North Dakota v. Gonzalez, 799 N.W.2d 402 (N.D. 2011). Gonzalez has since challenged his sentence and conviction through multiple post-conviction relief applications and appeals in state court, some of which have been successful.[4] (See generally Doc. No. 9 at 3-10).

### B.      Seventh Post-Conviction Relief Application

The procedural history relevant to the Petition begins with a state post-conviction relief application alleging newly discovered evidence filed in February 2018. (Doc. No. 7 at 3; Doc. No. 9-99). This was Gonzalez's seventh application for relief. (Doc. No. 9-101 at 4). In the application, Gonzalez alleged the State failed to disclose several pieces of evidence to him during the prosecution, including a report by K.V., a friend of L.G., alleging gross sexual imposition, the results of L.G.'s physical examination, and the results of DNA testing. (Doc. No. 9-99 at 1-2). Gonzalez also claimed the officer testifying during his preliminary hearing gave false testimony that the results of the DNA testing had not been received. Id. at 2. The court summarily denied the application based on the State's request before Gonzalez had an

_____

and convicted of attempted sexual exploitation of minors in United States v. Gonzalez, Case No. 1:11-cr-042, Doc. No. 107 (D.N.D. May 20, 2015). He is currently in federal custody serving a 300-month sentence. Id. Gonzalez has an anticipated release date of January 11, 2039. See Fed. Bureau of Prisons, www.bop.gov/inmateloc (last visited April 12, 2024).

[4] Most recently, the North Dakota Supreme Court held Gonzalez's amended sentence to a harsher term was illegal based on a change in state law. North Dakota v. Gonzalez, 1 N.W.3d 919, 921-22 (N.D. 2024). On February 8, 2024, the district court resentenced Gonzalez to five years concurrent on each count with credit for time served of 6 years, 6 months, and 153 days. North Dakota v. Gonzalez, Case No. 08-03-K-02928, Index 272 (Burleigh Cnty. Feb. 8, 2024). It appears that when Gonzalez is released from his current federal sentence, he will not have to serve any additional time on the state sentence.

opportunity to respond and before Gonzalez's motion for appointment of counsel was granted. (Doc. No. 9-101). The court relied on a state statute for misuse of process and concluded the issues raised by Gonzalez in the seventh application could have been raised in one of his previous requests for post-conviction relief.[5] Id. at 4.

Shortly thereafter, Gonzalez was appointed counsel to represent him. (Doc. No. 102). Gonzalez's attorney requested the court to reconsider the summary denial, requested leave to conduct discovery, and appealed to the North Dakota Supreme Court.[6] (Doc. Nos. 9-103, 9-104, 9-105, 9-107). To the district court, Gonzalez's attorney argued he should be allowed to present the newly discovered DNA analysis because the results were not available at the time of the preliminary hearing and were not disclosed to Gonzalez prior to his guilty plea. (Doc. No. 9-104, ¶ 8). Gonzalez's attorney argued the DNA results would have been material to both the probable cause determination and Gonzalez's decision to plead guilty. (Doc. No. 9-104, ¶ 8). Counsel asserted the newly discovered evidence, potential perjury by a state witness at the preliminary hearing, Brady violations, and denial of due process all warranted reconsideration of the post-conviction relief application on its merits. Id. ¶ 10.

The state court denied the motion to reconsider and the motion to conduct discovery. (Doc. 9-109). Irrespective of the DNA analysis, the court concluded the evidence supporting the probable cause determination was overwhelming based on the investigating detective's testimony. Id. ¶ 12. The detective testified L.G. had provided him a statement describing the sexual conduct and Gonzalez had admitted he engaged in sexual activity with her to a private

---

[5] See N.D. Cent. Code § 29-32.1-12(2).

[6] The Court foregoes detailing the procedural history surrounding the simultaneous appeal to the North Dakota Supreme Court and the request for reconsideration to the district court because it is not necessary to the issues presented in the Petition.

investigator. Id. ¶¶ 12, 23. Based on this testimony, the court found that the alleged newly discovered evidence would not have impacted the finding of probable cause. Id. ¶ 28. The court reviewed the extensive history of Gonzalez's post-conviction relief applications and again found that Gonzalez had prior opportunities to bring those issues forward but chose not to do so. Id. ¶¶ 14-22, 24, 29. The court concluded Gonzalez had not shown circumstances warranting setting aside the prior order denying the seventh application. Id. ¶¶ 30, 35-36.

On appeal, Gonzalez argued the district court abused its discretion by summarily denying his seventh application and denying the motion for reconsideration. (Doc. No. 112). The North Dakota Supreme Court held the summary denial was erroneous, but the crux of the issue was whether Gonzalez had been prejudiced by the error. See Gonzalez v. North Dakota, 923 N.W.2d 143, 144 (N.D. 2019). Because the district court had not addressed whether the newly discovered evidence would have impacted Gonzalez's decision to plead guilty, the court remanded the case to determine whether the DNA analysis would have been material to Gonzalez's decision. Id. at 148-49.

On remand, Gonzalez was appointed counsel, and the court held an evidentiary hearing on January 14, 2020. (Doc. Nos. 9-115, 9-116; 9-117). Gonzalez, his former criminal defense attorney, and a legal assistant from the prosecutor's office testified. (Doc. No. 9-117 at 9-40; Doc. No. 9-120, ¶¶ 20, 29). During the hearing, the State objected to categorizing the report as a DNA analysis and clarified that the tests were preliminary biological screenings. (Doc. No. 9-117 at 12-13). The screening report indicated "no spermatozoa observed, but epithelial cells are present;" in other words, the tested material showed "positive results for the enzyme found in semen, even though no sperm was present." Id. at 13. Counsel for Gonzalez agreed to that

clarification, and the court ruled the document was a screening document, not a DNA analysis.
Id.

The legal assistant testified to the prosecutor's process for sending discovery to defense counsel at the time of Gonzalez's prosecution. (Doc. No. 9-117 at 26-27). She further explained that if a defendant pleaded guilty prior to receiving the state lab's full analysis of DNA testing, the lab would be notified that the results were not needed. Id. at 27. Gonzalez's former defense counsel testified he had very little independent recollection of the case and his old criminal defense files were destroyed when he left his private law practice in 2009. Id. at 30-31. He testified that his process, without exception, was to send all discovery documents to his clients. Id. at 31. So, whatever he received from the State's attorney's office would be copied and forwarded to the client. Id. Defense counsel further recalled that Gonzalez did not dispute he had engaged in sexual acts with L.G., only her motivation had been an issue. Id. at 32-33.

Gonzalez testified that he received the screening report sometime in 2016 in response to an open records request he made on February 23, 2016. Id. at 15. He denied having reviewed the report prior to changing his plea. Gonzalez testified that no-one explained to him what the report meant for his case. Id.  He asserted the report would have affected his decision because "[f]rom what I saw it didn't have anything to with me." Id. at 15-16.

The court again denied Gonzalez's seventh application. (Doc. No. 9-120). Based on the evidence presented at the hearing, the court concluded the screening report was not newly discovered, finding:

> [T]here is nothing offered by Petitioner Gonzalez that disputes the logical presumption that the DNA screening document, to the extent it has any relevance, was sent to defense counsel and received and reviewed by him before Gonzalez entered his plea of guilty.

Id. ¶ 30. The court concluded Gonzalez was aware that evidence potentially containing DNA evidence was collected and being tested at the state lab at the time of his plea, explaining:

> The allegation is that a DNA screening document was discovered after Petitioner Gonzalez pled guilty. The Court concludes the best evidence suggests that the referenced document . . . was given to the defense prior to the Preliminary Hearing. It is uncontroverted that during the Preliminary Hearing DNA samples were discussed and that samples had been sent to the North Dakota State Laboratory. ***The Court concludes that Petitioner Gonzalez was more than aware at the time he decided to change his plea that … evidence potentially containing DNA was collected at the alleged crime scene and sent to the State Lab for analysis.*** The Court concludes that this was clearly taken into account by him and his counsel in contemplation of a plea.

Id. ¶ 41 (emphasis added).

The court also considered that Gonzalez's guilty plea was the result of a negotiated deal with the prosecutor that included a favorable proposed sentencing recommendation. Id. ¶ 35. While he faced a maximum of 40 years imprisonment on the two felonies, the court concluded the plea offered a "good deal." Id. ¶ 35. The court further held that Gonzalez's alleged failure to learn about the testing results before pleading guilty was due to his own choices and the decision to accept the plea deal when he did, explaining:

> The credible and persuasive evidence is that [P]etitioner Gonzalez was very aware that DNA samples were collected from the crime scenes and sent to the North Dakota State Laboratory by the time he reached the Preliminary Hearing and was considering a change of plea based upon a proposed plea deal. ***The timing of the change of plea was in the hands of Petitioner Gonzalez. If he wanted to wait for DNA analysis (to the extent it may have influenced his decision to change his plea) all he had to do is convey that to his attorney. But timing clearly was an issue. A favorable plea deal was offered and accepted based upon the status of the case at that time.*** Petitioner Gonzalez took a knowing and voluntary risk but also accepted a favorable plea deal. He chose to not wait for DNA results. His investigator's proposed testimony that Gonzalez admitted the sexual act also clearly influenced his decision to plead guilty.

Id. ¶ 42 (emphasis added).

The court emphasized that regardless of the results, the overarching problem Gonzalez faced was his own admission that sexual acts had occurred between him and L.G., a 14-year-old. Id. ¶ 44. The court concluded "there is and was no 'newly discovered evidence' which would justify [] granting the seventh post-conviction relief petition." Id. ¶ 46. On appeal, the North Dakota Supreme Court summarily affirmed, concluding "the decision of the district court is supported by findings meeting the required standard of proof[.]" (Doc. No. 9-126 at 2).

### C.    Eighth Application for Post-Conviction Relief

Gonzalez next brought a motion requesting the state court rule on the alleged "unaddressed issues" in his seventh application. (Doc. No. 9-127). He identified those issues as an undisclosed police report by K.V., the results of L.G.'s physical examination, and the state's failure to correct allegedly false testimony during the preliminary hearing. Id. at 2-3. Gonzalez asserted he did not have the K.V. police report until 2016. Id. at 3. He again argued the court erred when it held the DNA screening report could have been raised in prior proceedings because he had only received that report in 2016, too. Id. Gonzalez further argued the court erred by not addressing the Brady and due process violations. Id. at 3. The court treated this motion as an eighth application for post-conviction relief. (Doc. No. 9-133, ¶ 1). Counsel was appointed to represent him, and she filed a supporting brief. (Doc. Nos. 9-129, 9-131).

The eighth application was denied on August 20, 2021. (Doc. No. 9-133, ¶¶ 9-11, 33-34). As to K.V.'s police report, the court concluded the issue lacked merit and strongly doubted such a report ever existed because it had not been produced during any of the prior proceedings, explaining:

> Petitioner Gonzalez attempts to feather out his prior [argument] that the State in the underlying case had suppressed [what] he asserts is a relevant and related police report of a GSI claiming that the victim's sister and the victim's friend had filed GSI reports that Gonzalez now claims was directly related to the present case and

8

were evidence of "collusion." ***He points to nothing in the record.*** It is a wholly undocumented claim that amounts to nothing more than assertion, that "if I say that such a report exists enough times, it must be true, there must be a report and I did not get it." ***There is no evidentiary basis to believe such a report existed.***

Id. ¶¶ 41-42 (emphasis added).

The court concluded that regardless of Gonzalez's collusion theory, L.G.'s statement "was well known to Gonzalez" before he pleaded guilty. Id. ¶ 43. His attorney had added the information on the record and Gonzalez had still entered a guilty plea. Id.

The court next rejected the claim that false testimony was given by the detective at the preliminary hearing. (Doc. No. 9-133, ¶¶ 44-46). Detective Kaiser testified "that although items had been sent to the lab for testing and comparison to [Gonzalez], the results were not back yet (as of the date of the Preliminary Hearing)." Id. ¶ 44. The court held "Detective Kaiser's testimony was not 'false'" because the "testing and comparison had not been completed at the time of the Preliminary Hearing." Id. ¶ 45. The court concluded this was another manufactured issue by Gonzalez that was not unaddressed in previous orders. Id. ¶ 46. In sum, Gonzalez's petition was found to have no merit and was denied.[7] Id. ¶ 11.

After the eighth application was denied, Gonzalez filed a flurry of motions, including a motion to suspend judgment, two notices of appeal, a motion for order to show cause, an amended motion to suspend judgment, and an amended motion for order to show cause. (Doc.

---

[7] The state court did not directly address the alleged non-disclosure of the results from L.G.'s physical examination. The purported medical report was not provided in the state court proceeding and it is unknown whether L.G.'s report was ever part of the State's file. Gonzalez attested only that he had reviewed a police report indicating L.G. had been taken for a medical examination, but he never saw the results. (Doc. 9-128, ¶ 3). Gonzalez's petition referenced the medical report only in passing, and he failed to develop the record by explaining how knowledge of L.G.'s physical examination would have impacted his decision to plead guilty. (Doc. No. 9-130, ¶¶ 13, 15). His counsel's brief simply stated, "the results of the physical examination . . . would not have supported the accusations" without explaining how or why. (Doc. 9-131, ¶ 3).

Nos. 9-135, 9-136, 9-137, 9-141, 9-143, 9-145). The theme in these motions was ineffective assistance of counsel. Gonzalez contended that post-conviction counsel had not communicated with him or obtained the evidence he requested she procure, had filed a brief without providing him a copy of it, and "left him in the dark" concerning the case. (See, e.g., Doc. No. 143). The State responded and brought its own motion to declare Gonzalez a vexatious litigant. (Doc. Nos. 9-138, 9-139, 9-142, 9-146). The state court denied Gonzalez's motions. (Doc. Nos. 9-149, 9-150, 9-151, 9-153.). The State's motion was granted, and Gonzalez was declared a vexatious litigant. (Doc. No. 9-150).

Gonzalez filed a third amended notice of appeal from the denial of his various motions.[8] (Doc. No. 157). Gonzalez ***did not*** include an appeal from the district court's Findings and Order Denying Eighth Post Conviction Relief Petition dated August 20, 2021, in the notice. Id. On May 26, 2022, the North Dakota Supreme Court summarily affirmed, holding "the district court did not err in denying Gonzalez's application for post-conviction relief, titled as motions to suspend judgment and for an order to show cause."[9] Gonzalez v. North Dakota, 974 N.W.2d 664, 665 (N.D. 2022). The court held Gonzalez's claim of ineffective assistance of post-conviction counsel was precluded by N.D. Cent. Code § 29-32.1-09(2) and Atkins v. State, 2021 N.D. 34, ¶ 11, 955 N.W.2d 109. Id.

Gonzalez timely filed his first § 2254 Petition on May 24, 2023. (Doc. No. 1).

---

[8] Gonzalez's third notice stated an appeal was being taken from the order denying the motion to suspend judgment, the order denying the motion for order to show cause, the order denying the amended motion to suspend judgment, the order denying the amended motion for order to show cause, and the order declaring him a vexatious litigant. (Doc. No. 157).

[9] The North Dakota Supreme Court did not address the order denying Gonzalez's eighth application for post-conviction. (Doc. No. 160).

## II.   PETITION

Gonzalez's habeas petition raises one ground for relief: that he was denied due process in violation of the Fourteenth Amendment. (Doc. No. 7 at 5). In support, he asserts:

> Issues raised in the application for post conviction relief [alleging] newly discovered evidence were left unaddressed by the state courts. Particularly the state suppression of both the results of the medical examination & related police report by a friend of the alleged victim.

Id.

Gonzalez requests the case be remanded to the district court to fully address the undressed issues—L.G.'s medical examination and K.V.'s police report. Id. at 14. He contends "[a]ny future state custody would be in violation of the U.S. Constitution as I was denied due process by the court's failing to address the issues raised in the post conviction application." (Doc. No. 7-1 at 2). But Gonzalez was resentenced on February 8, 2024, and does not have any further state time to serve once he completes his federal sentence. See supra p. 2-3, n. 3.

## III.   GOVERNING LAW

### A.   Scope of Review

Under 28 U.S.C. § 2254, a federal court may review state-court criminal proceedings to determine whether a person is being held in custody in violation of the United States Constitution or other federal law. When the state court has adjudicated the constitutional claim on the merits, this court's review is limited by 28 U.S.C. § 2254(d). The court may grant relief *only* if it determines the state court's decision is (1) directly contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) based on an unreasonable determination of the facts based on the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d) (emphasis added); see generally Harrington v. Richter, 562 U.S. 86, 97–100 (2011); Williams v. Taylor, 529 U.S. 362, 399–413 (2000).

This is a highly deferential standard of review, often referred to as "AEDPA deference" because it was enacted by the Antiterrorism and Effective Death Penalty Act of 1996. E.g., Pederson v. Fabian, 491 F.3d 816, 824-25 (8th Cir. 2007); see generally Renico v. Lett, 559 U.S. 766, 773 n.1 (2010). The reasons for the limited review are ones of federalism and comity that arise because state courts have primary responsibility for ensuring compliance with federal law in state criminal proceedings. See, e.g., Richter, 562 U.S. at 103.

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody." Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) (citing Preiser v. Rodriguez, 411 U.S. 475, 484 (1973)). Accordingly, federal habeas relief is available to a state prisoner only on the ground that he or she is in custody in violation of a constitutional or federal statutory right. Williams–Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990); 28 U.S.C. § 2254(a). Claims that do not reach a level of "constitutional magnitude" cannot be addressed in a § 2254 petition. Carter v. Armontrout, 929 F.2d 1294, 1296 (8th Cir. 1991).

"Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." Williams–Bey, 894 F.2d at 317. In other words, "Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding." Id. This means the court does not review whether the state court's post-conviction proceedings were flawed. So, to the extent that Gonzalez argues the state court denied him due process when adjudicating his post-conviction applications (i.e., the alleged failure to fully address the issues), such claims are not cognizable, and this court cannot provide relief on that basis. See id.; see also Boos v. Fabian, No. 05-523, 2008 WL 398787, at *7 (D. Minn. Feb. 12,

2008) (holding that habeas relief based on the post-conviction court's failure to address the claims in his supplemental *pro se* brief was not cognizable).

**B.      State Court Decision Under Review**

This court's function is limited to determining whether the state court's decision was contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts in light of the evidentiary record. 28 U.S.C. § 2254(d). This limitation raises another issue: which state court decision is under review in Gonzalez's Petition? The State says Gonzalez has exhausted his state remedies, but that does not answer the question. (Doc. No. 9 at 17).

Section 2254(b)(1) provides that a writ for habeas corpus may only be granted if the applicant has exhausted the remedies in state court; there is no available state corrective process; or the circumstances render the state process ineffective to protect the applicant's rights. 28 U.S.C. § 2254(b)(1). Ordinarily, the court would review the decision of the highest state court to rule on the issues based on the exhaustion requirement. See id.; Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"). To exhaust a claim, the petitioner must fairly present his federal claim to the appropriate state courts in the manner required by state law, thereby "afford[ing] the state courts meaningful opportunity to consider [the] allegations of legal error." Vasquez v. Hillery, 474 U.S. 254, 257 (1986); Chatman v. Sayler, No. 1:20-CV-047, 2022 WL 4182248, at *14 (D.N.D. Sept. 13, 2022) (explaining that the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process.") (citing <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

The North Dakota Supreme Court did not address the substantive denial of Gonzalez's eighth post-conviction application; it only considered the motions to reconsider that were filed afterward. <u>Gonzalez</u>, 974 N.W.2d at 665. Thus, Gonzalez failed to exhaust the substantive claims raised in his eighth post-conviction application. <u>Chatman</u>, 2022 WL 4182248, at *14. And, thus, Gonzalez has procedurally defaulted this claim in this court. See <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35, n.1 (1991) (explaining that "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.").

Because the State did not argue procedural default in this context, and a petition may be denied on the merits notwithstanding the failure to exhaust, the court will proceed.[10] See 28 U.S.C. § 2254(b)(2). The court deems the Findings and Order Denying Eighth Post Conviction Relief Petition dated August 20, 2021, as the decision under review. (Doc. No. 9-133).

### C.    Failure to Develop the State Record

Before reviewing the state court's decision, another preliminary matter must be addressed. Gonzalez has for the first time produced the much-touted police report by K.V. to this court. (Doc. No. 15-2). The report details that K.V., a juvenile female under the age of 15,

---

[10] To be clear, the State argued Gonzalez procedurally defaulted the "newly discovered evidence" claim by failing to develop the factual predicate in state court, which is discussed in Section III.C. (Doc. No. 9 at 17-19). It did not argue procedural default by failing to appeal the denial of the eighth application to the North Dakota Supreme Court.

alleged Gonzalez repeatedly attempted to engage her in sexual activity while he was at her house visiting her sister. Id. at 3. The state declined to prosecute. Id. at 4. To whatever extent Gonzalez believes this report is helpful to support his Petition, the Court will not consider it.

A habeas court's review is limited to the state court record and AEDPA strictly limits the court's ability to consider new evidence that was not developed in state court proceedings. See 28 U.S.C. §§ 2254(d), (e)(2); Shoop v. Twyford, 596 U.S.  811, 819 (2022) (stating "AEDPA also restricts the ability of a federal habeas court to develop and consider new evidence" and § 2254(d) is "limited to the record that was before the state court") (internal quotations omitted). In fact, "AEDPA's statutory scheme is ***designed*** to strongly discourage" state prisoners from submitting new evidence in federal court. Id. at 819-20 (emphasis added).

When a petitioner fails to develop the factual record in state court, a habeas court may admit new evidence ***only*** if the claim relies upon a new and previously unavailable rule of constitutional law made retroactive by the Supreme Court, or on facts that "could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(i), (ii). Under either exception, the petitioner must also show that "the desired evidence would demonstrate, by clear and convincing evidence, that no reasonable factfinder would have convicted him of the charged crime." Shoop, 596 U.S. at 819; 28 U.S.C. § 2254(e)(2)(B).

Expansion of the record is not appropriate under either exception. First, Gonzalez's Petition does not rely on a new rule of constitutional law. His claims of Brady violations and denial of due process are not new constitutional claims. Second, the state court record amply supports that K.V.'s report could have been obtained through the exercise of due diligence, particularly in light of the numerous proceedings that surrounded Gonzalez's seventh and eighth

applications for relief. Finally, Gonzalez admitted during the state evidentiary hearing that he had obtained the report himself sometime in 2016.

To overcome the state court's lack of diligence finding, Gonzalez blames his post-conviction counsel for not obtaining the information and submitting it. (Doc. No. 15 at 2-3). The argument is immaterial. The Supreme Court has recently reiterated that "under AEDPA and our precedents, state postconviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner." Shinn v. Rodriguez, 596 U.S. 366, 382 (2022); see also Holland v. Jackson, 542 U.S. 649 (2004) (per curiam) (holding state postconviction counsel's negligent failure to locate a witness to provide impeachment testimony was chargeable to the petitioner and precludes relief unless § 2254(e)(2) is satisfied). In other words, Gonzalez's claim that his post-conviction counsel failed to obtain the document and file it does not allow this Court to consider the previously unproduced K.V. report.

Additionally, the Court finds the claim of ineffective assistance of post-conviction counsel specious. It appears that Gonzalez was in possession of K.V.'s report during the state court proceedings. In his March 8, 2021 motion, Gonzalez represented that he obtained the police report through an open records request in 2016. (Doc. No. 9-127 at 3). This is consistent with his testimony at the evidentiary hearing on January 14, 2020. (Doc. No. 9-117 at 17 (explaining that while at the NDSP, he "started requesting information from these agencies. One was the State, one was the Bismarck Police Department, the other one was the state lab, and the other one was the Bureau of Criminal Investigation.")). He also admitted in this Court that he obtained the police record in that manner. (Doc. 15 at 3). Based on those representations, his failure to develop the record and provide K.V.'s report during the state proceedings cannot be

excused under 28 U.S.C. § 2254(e)(2). Thus, the Court will not consider the police report filed at Document 15-2.

### D.    Alleged Due Process and __Brady__ Violations

Turning now to the substance of Gonzalez's claims for relief, he alleges the State withheld information during his prosecution in violation of his due process rights under Brady v. Maryland, 373 U.S. 83 (1963) and contends the state court did not fully address the issues of K.V.'s undisclosed police report or L.G.'s medical record in the post-conviction proceedings. (Doc. No. 7 at 5). Gonzalez asks this Court to remand the case to have the "unaddressed" issues fully addressed by the state court. The federal district court, however, does not have remand authority and does not exercise general appellate jurisdiction over a state court.[11] Keene Corp. v. Cass, 908 F.2d 293, 296 (8th Cir. 1990) (stating "[f]ederal courts, with the exception of the United States Supreme Court, do not possess appellate jurisdiction over state court proceedings."). In a habeas corpus matter, this Court has only limited subject matter jurisdiction under the strictures of AEDPA to determine whether Gonzalez's state conviction violated federal law. See generally 28 U.S.C. § 2254(a), (b), (d).

Because he is acting pro se, the Court broadly construes Gonzalez's Petition, without regard to his request for remand. See Miller v. Kemma, 207 F.3d 1096, 1097 (8th Cir. 2000) (stating pro se habeas petition should be construed liberally and with a measure of tolerance). In doing so, the Court frames the issue as whether Gonzalez's due process rights under the Fourteenth Amendment and Brady were violated by the State's alleged suppression of K.V.'s police report and L.G.'s medical report. Construing this as the issue, AEDPA directs the Court

---

[11] Gonzalez's request for a remand should have been presented to the North Dakota Supreme Court in his appeal.

"to undertake only a limited and deferential review" of the state court decision. Collier v. Norris, 485 F.3d 415, 421 (8th Cir. 2007). As such, the Court must examine: (1) whether the state court decision denying the eighth application was contrary to or an unreasonable application of clearly established federal law; or (2) whether the decision was based on an unreasonable determination of the facts based on the evidentiary record in the state proceeding. See id.; 28 U.S.C. § 2254(d).

        i.      The State Court's Determination Was Not Unreasonable.

The Court addresses the second inquiry first because it ties into Gonzalez's failure to develop the record. K.V.'s police report was not made part of the state court record, nor were the results of L.G.'s alleged physical examination. It bears repeating that a federal habeas court is limited to reviewing the state-court record and only rarely may consider evidence not submitted to the state court. Shinn, 596 U.S. at 375-76, 378. Here, the state court denied Gonzalez's eighth application, in part, based on its conclusion that the police report was a non-existent issue. As that court found, "[t]here is no evidentiary basis to believe such report existed." (Doc. No. 9-133, ¶ 42). That conclusion was eminently reasonable based on the state record. Regardless that Gonzalez has now produced K.V.'s report for the first time in this federal habeas case, the Court will not consider it for the reasons discussed previously. See 28 U.S.C. § 2254(d)(2); Shoop, 596 U.S. at 819. The Court further notes it has discretion to deny admission of new evidence even if the requirements of § 2254(e)(2) are satisfied, which they are not. See Shinn, 596 U.S. at 381-82 (stating "even if all of these requirements are satisfied, a federal habeas court still is not *required* to . . . take any evidence" based on "principles of comity and finality that govern every federal habeas case.").

As to L.G.'s medical report, that too was not made part of the state court record. Furthermore, there is no evidence the State ever obtained her medical report. (Doc. No. 9 at 17-

18). Gonzalez believes such a report exists only because a police report referred to L.G. having been taken to a local medical facility after the sexual activity. Gonzalez did not develop his argument in state court beyond the conclusory statement that "the results of the physical examination . . . would not have supported the accusations." (Doc. 9-131, ¶ 3). He did not explain how or why that would be so. Given that Gonzalez admitted L.G. twice performed oral sex on him, it is difficult for this Court to fathom how the results of L.G.'s medical examination would have any bearing on his decision to plead guilty. The Court concludes the state court's denial of Gonzalez post-conviction relief on this basis was not objectively unreasonable.

ii.    The State Decision Was Not Contrary to Federal Law

Turning to whether the state court's decision was contrary to or an unreasonable application of federal law, the Court finds no such violation. A decision is contrary to federal law if the state court "applies a rule that contradicts the governing law" set out by the Supreme Court, or if it considers facts that are "materially indistinguishable" from a Supreme Court case and decides differently. Brown v. Payton, 544 U.S. 133, 141 (2005).

Gonzalez deems K.V.'s police report and L.G.'s medical report exculpatory evidence that should have been disclosed to him prior to his plea of guilty.[12] "In Brady, the Supreme Court held that 'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" Villasana v. Wilhoit, 368 F.3d 976, 978 (8th Cir. 2004), cert. denied, 543 U.S. 1153 (2005) (quoting Brady, 373 U.S. at 87). Materially

---

[12] No evidence was presented in state court that the State had either K.V.'s police report or L.G.'s medical report as part of its file in the underlying prosecution. Because the parties have not raised whether the State had a duty to obtain that information, the Court does not address that issue.

19

favorable evidence, under Brady, includes both exculpatory and impeachment evidence. Id. (citing United States v. Bagley, 473 U.S. 667 (1985)). To succeed on a Brady claim, a defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was material and favorable to the defendant, and (3) prejudice ensued. Collier, 485 F.3d at 421-22. But "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995); see also Villasana, 368 F.3d at 979 (holding the prosecutor did not violate Brady by failing to obtain and disclose crime lab expert's lab notes and test documents).

Laying aside the issues of materiality and favorableness, there is no clearly established constitutional right to the disclosure of Brady material prior to the entry of a guilty plea. The Supreme Court addressed pre-guilty-plea disclosures in United v. Ruiz, 536 U.S. 622 (2002). In Ruiz, the Supreme Court rejected the proposition that a guilty plea is involuntary where Brady impeachment material is not disclosed before the plea. Id. at 628. The Supreme Court explained that the right to receive impeachment material emanates from the constitutional guarantee of a right to a "fair trial." Id. at 628. However, "[w]hen a defendant pleads guilty he or she, of course, foregoes not only a fair trial, but also other accompanying constitutional guarantees." Id. The Supreme Court reasoned that "impeachment information is special in relation to the *fairness of the trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficiently aware')." Id. at 629 (cleaned up). After weighing multiple considerations, the Supreme Court concluded "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." Id. at 633.

The State argues Ruiz applies in this case because Gonzalez pleaded guilty, and the alleged undisclosed evidence is impeachment material at best. (Doc. No. 9 at 22-24). The Court

agrees. K.V.'s police report is not exculpatory or favorable, and the results of L.G.'s physical examination, which are unknown, are unlikely to be exculpatory or favorable given the sexual contact with L.G. was oral sex. Moreover, <u>Brady</u> does not impose a "burden on the Government to determine what facially nonexculpatory evidence might possibly be favorable to the accused by inferential reasoning." <u>Villasana</u>, 368 F.3d at 979. Nevertheless, even if the Court construes the information as exculpatory—as suggested by Gonzalez—the result remains the same: Gonzalez is not entitled to habeas relief.

The Supreme Court has never held that due process requires all useful information to be shared with the defendant. <u>See</u> <u>Ruiz</u>, 536 U.S. at 629. Nor has the Supreme Court held the Constitution requires all exculpatory evidence to be provided to a criminal defendant prior to the entry of a guilty plea. <u>See</u> <u>Freeman v. Attorney Gen. for New Mexico</u>, No. 20-910, 2023 WL 5320041 at *6-7 (D.N.M. Aug. 18, 2023), <u>report and recommendation adopted by</u> <u>Freeman v. Martinez</u>, 2023 WL 7151075 (D.N.M. Oct. 31, 2023) (observing "the Supreme Court has not decided that the due process protections it recognized in <u>Brady</u> . . . are implicated at the time a defendant enters a guilty plea.").

Lower federal courts are divided on whether there is a federal constitutional right to exculpatory <u>Brady</u> information before entering a guilty plea, with numerous courts holding there is no such federal constitutional right. <u>Id.</u> at 6; <u>Robertson v. Lucas</u>, 753 F.3d 606, 621 (6th Cir. 2014) ("Whatever rights appellants had to receive exculpatory evidence prior to entering their pleas was not clearly established."); <u>United States v. Mathur</u>, 624 F.3d 498, 507 (1st Cir. 2010) (observing that the right memorialized in <u>Brady</u> is universally acknowledged as a trial right); <u>United States v. Conroy</u>, 567 F.3d 174, 178 (5th Cir. 2009) (rejecting claim that government's failure to turn over alleged exculpatory evidence in violation of <u>Brady</u> rendered her guilty plea

unknowing and involuntary); see also United States v. Colbert, 76 F.4th 1039, 1040 (8th Cir. 2023) (citing Ruiz and holding government's failure to disclose information regarding investigating officer's credibility did not render guilty plea involuntary); 6 Wayne R. LaFave et al., Criminal Procedure, § 24.3(b) (4th ed.) (Supp. 2023) ("The debate about non-impeachment exculpatory evidence left open by . . . Ruiz divided the courts before and after the decision, and continues in scholarly commentary."). The debate over pre-plea disclosure of non-impeachment material has not been resolved since Ruiz and certainly the law was not "clearly established" at the time Gonzalez entered his guilty plea in January 2004. See Evenstad v. Carlson, 470 F.3d 777, 783 (8th Cir. 2006) ("When the federal circuits disagree as to a point of law, the law cannot be considered 'clearly established[.]'").

Therefore, even assuming the undisclosed reports were non-impeachment Brady material, the Court cannot conclude the denial of Gonzalez's post-conviction relief application was contrary to clearly established federal law. In other words, the alleged withholding of this information, even if characterized as Brady material, did not vitiate Gonzalez's knowing and voluntary guilty plea. The state court's decision denying post-conviction relief to Gonzalez was not contrary to or an unreasonable application of clearly established law; nor did the decision involve an unreasonable determination of the facts based on the record before that court. See 28 U.S.C. § 2254(d). Thus, Gonzalez is not entitled to habeas relief.

Last, Gonzalez argues that even if no Brady violation occurred, there is still a violation of the state's criminal discovery rules. (Doc. No. 15 at 1, 4). This argument lacks merit. "[F]ederal habeas corpus relief does not lie for errors of state law . . . [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Evenstad, 470 F.3d at 782 (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (internal quotations omitted).

IV. <u>CONCLUSION</u>

For these reasons, Gonzalez's Petition for habeas corpus relief under 28 U.S.C. § 2254 is denied. The Court finds that any appeal would be frivolous, could not be taken in good faith, and may not be taken in forma pauperis. 28 U.S.C. § 1915(a)(3); <u>see also</u> <u>Coppedge v. United States</u>, 360 U.S. 438, 444-45 (1962).

V. <u>CERTIFICATE OF APPEALABILITY</u>

The Court may issue a certificate of appealability only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To satisfy this standard, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)); <u>see also</u>, <u>United States v. Lambros</u>, 404 F.3d 1034, 1036-37 (8th Cir. 2005); <u>Garrett v. United States</u>, 211 F.3d 1075, 1076-77 (8th Cir. 2000) (per curiam), <u>cert. denied</u>, 531 U.S. 908 (2000).

Based upon the entire record before the Court, reasonable jurists would not find the denial of this Petition debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. Consequently, no certificate of appealability shall be issued. <u>See</u> <u>Tiedeman v. Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

Dated this 13th day of May, 2024.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court